HEISKELL WEATHERFORD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weatherford v. Comm'r
Docket No. 26073-89
United States Tax Court
T.C. Memo 1991-132; 1991 Tax Ct. Memo LEXIS 151; 61 T.C.M. (CCH) 2232; T.C.M. (RIA) 91132; March 25, 1991, Filed *151 Decision will be entered under Rule 155. Heiskell Weatherford, pro se. Rebecca A. Dance and James E. Keeton, Jr., for the respondent. SHIELDS, Judge. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION In a timely notice of deficiency respondent determined deficiencies in and additions to petitioner's Federal income taxes for 1984 and 1985 as follows: Additions to Tax Under Sections
Year
Deficiency
6651(a)(1)[1]
6653(a)(1)
6653(a)(2)
6661
1984
$ 12,517.44
$ 2,604.82
$ 650.02  *
$ 3,055.36
1985
25,091.06
--  1,254.55
*
6,197.01
After concessions by both parties the issues are: (1) Whether petitioner failed to report, as contended by respondent, taxable income in the amounts of $ 25,149.94 and $ *152 44,310.61 for 1984 and 1985, respectively; (2) whether petitioner is entitled to a deduction in 1984 in the amount of $ 188.18 for dues and publications; (3) whether petitioner is liable for self-employment taxes for 1984 and 1985; and (4) whether petitioner is liable for additions to tax provided by section 6653(a)(1) and (2) and section 6661. FINDINGS OF FACT Petitioner, a resident of Memphis, Tennessee, at the time he filed his petition herein, is an attorney. Prior to 1984 he was engaged in the full-time practice of law with the firm of Canada, Russell and Turner. However, during 1984 the type of practice he was handling for the firm, which consisted primarily of employment discrimination problems for the City of Memphis and construction litigation for a housing development, began to decline. As a result he decided to quit the practice of law and enter the investment field. With this goal in mind he commenced to close out his practice during 1984 but continued to receive some income from the law firm into 1985. During 1984 and 1985 petitioner had checking account No. XX-XXX8014 with First Tennessee Bank (checking account) and brokerage account No. XXXX-X5429 with Refco *153 (Refco Brokerage Account). Petitioner was also the sole stockholder of Cupcake, Inc., which had brokerage account No. X8564 with Clayton Brokerage Company (Clayton Brokerage Account). During 1984 and 1985 petitioner had exclusive control over the Clayton Brokerage Account and was responsible for all deposits to and disbursements from the account. During at least part of 1984 petitioner also had brokerage account No. XXXX-X5429 with Refco. On his 1984 income tax return petitioner claimed three exemptions, for himself and two children, and reported gross receipts of $ 23,139 from wages or salaries and $ 16,143 from business activities which he referred to as "Investments/Attorney." After deducting business expenses, including $ 19,603 for indemnification of "customers' losses" he claimed a net loss from his business activities of $ 8,232. On Schedule D to the 1984 return he reported substantial capital losses from the Refco Brokerage Account and the Clayton Brokerage Account. On his 1985 income tax return petitioner again claimed three exemptions, for himself and two children, and reported gross receipts from wages or salaries in the amount of $ 12,612. On Schedule D to the 1985 *154 return he reported substantial capital losses from the Clayton Brokerage Account. Petitioner's 1984 and 1985 returns were audited by an agent for respondent. During the audit petitioner was unable to produce sufficient accounting books or other records to satisfy the agent of the accuracy of petitioner's returns. Consequently, the agent analyzed the aforesaid three accounts of petitioner but was unable to establish the source of certain deposits. Therefore, the agent concluded that the unidentified deposits were additional taxable income to petitioner which resulted in the deficiencies determined by respondent in the deficiency notice. At and before trial both parties made concessions. Petitioner conceded: (1) That he was not entitled to the two dependency exemptions claimed for his children on the 1984 and 1985 returns; (2) that he received dividend income in the amount of $ 186 during 1985; (3) that he received ordinary income from the city of Memphis in the amount of $ 3,475 during 1985; (4) that he received a taxable distribution from his law firm in the amount of $ 1,814 during 1985; and (5) that he is not entitled to a deduction for interest expense in 1984 in the amount *155 of $ 3,816. Respondent conceded: (1) That petitioner is entitled to a downward adjustment in the additional gross receipts determined by respondent for 1984 and 1985 in the respective amounts of $ 4,417.06 and $ 8,064.39; (2) that petitioner is entitled to a deduction for dues and publications in the amount of $ 1,179.82 in 1984; (3) that petitioner is entitled to a long-term capital loss carryover to the taxable year 1986 in the amount of $ 159,163; (4) that petitioner is entitled to a short-term capital loss carryover to 1986 in the amount of $ 121,816; and (5) that petitioner is not liable for the addition to tax provided by section 6651(a)(1) for 1984. OPINION (1) Omitted Taxable Income
On brief respondent contends that after taking into consideration the concessions made by both parties with respect to 1984 petitioner has unreported income of $ 25,149.94 which is represented by unexplained deposits made to his Refco Brokerage Account and to his checking account. Respondent's computation for 1984 is as follows: Unexplained deposits to Refco Brokerage Acct. #XXXX:
May 16, 1984  $ 2,176.00 Unexplained deposits to checking acct:
Total deposits to acct.
$ 63,673.00
Funds available for deposit:
Wage income reported     $ 23,139.00 Sch. C income     16,143.00 Draw from margin acct.     1,200.00 IRS refund     3,767.06 Loan from mother     650.00 Total     $ 44,899.06 Less: FICA & withholding     (3,000.00)
Margin draw not deposited     (1,200.00)
Net funds available          40,699.06
Unexplained deposits to checking acct.
22,973.94
Total unexplained deposits
$ 25,149.94
*156 With respect to 1985 respondent contends that after taking into consideration the concessions made by the parties petitioner still has unreported income of $ 44,310.61 as represented by unexplained deposits to the Clayton Brokerage Account. Respondent's computation with respect to 1985 is as follows: Unidentified deposits to Clayton Brokerage Account:
July 26, 1985     $ 4,500.00 October 4, 1985     2,000.00
October 7, 1985     4,250.00
October 11, 1985     3,000.00
October 21, 1985     18,750.00
November 5, 1985     19,875.00
Total unidentified deposits     $ 52,375.00
Less identified sources:
Law firm distribution (10/21/85)     $ 1,814.39
Conceded by respondent (10/4/85)     2,000.00
Conceded by respondent (10/7/85)     4,250.00
Total     8,064.39
Unidentified deposits
$ 44,310.61
With respect to respondent's computation for 1984 petitioner contends that the deposit of $ 2,176 to the Refco Brokerage Account No. XXXX-X5429 on May 16, 1984, is not taxable income. Instead he claims this deposit merely represents a nontaxable transfer which occurred when he closed Refco Brokerage Account No. XXXX-X5429 and transferred the balance *157 in that account presumably $ 2,176 to account No. XXXX-X5429. With the exception of his own testimony that the transfer occurred, which testimony on the whole was extremely vague and unpersuasive, petitioner produced at trial only 1984 Statements of Profit or Loss for both accounts (No. XXXX and No. XXXX). While these statements corroborate his testimony that there were in fact two accounts and that there was only transactions in account No. XXXX during January of 1984, we are unable to accept them as independent confirmation of his claim that account No. XXXX was closed in May of 1984 and its balance was transferred to account No. XXXX, or that if so transferred the balance was $ 2,176. Furthermore, since the record contains no explanation for the absence of credible evidence from any official from Refco or any of its accounting records with respect to this issue we are forced to agree with respondent that if such evidence was present it would not be favorable to petitioner. , affg. . With respect to the other $ 22,973.94 in unidentified deposits *158 determined by respondent for 1984, petitioner concedes on brief that he is unable to identify the source of $ 3,331.75. However, petitioner testified that the sources of the balance of $ 19,641.25 in these deposits were as follows: Date of
Deposit
Amount
Source 3/14/84
$ 2,000.00   personal loan from a friend 4/06/84
16,368.25  liquidation of a savings acct. date
unspecified
1,273.00  two expense checks ($ 267 & $ 650) and a loan of $ 350 from Federal  Credit Union  Total
$ 19,641.25  Here again petitioner's testimony is vague and unpersuasive. According to him the source of the $ 2,000 deposited on March 14, 1984, was a loan from an unidentified friend; the source of the $ 16,368.25 deposited on April 6, 1984, was from an unidentified savings account which he closed out; and the $ 1,273 was represented by two expense reimbursements and the proceeds from a loan from a Federal Credit Union. Without any corroboration we cannot accept petitioner's testimony alone as being sufficient to carry his burden of proving that the deposits did not represent taxable income. Furthermore, in the absence of testimony or other evidence from the third parties who *159 according to petitioner were involved in these deposits, we can only conclude that if any such evidence was produced, it would not be favorable to petitioner. Consequently, on this record we are unable to find as a fact that the sources of these deposits were as claimed by petitioner. In respondent's computation for 1985 the deposits which are still unidentified were made to the Clayton Brokerage Account as follows: Date of
Amount of
Deposit
Deposit
07/26/85
$ 4,500
10/11/85
3,000
10/21/85
18,750
11/05/85
19,875
At trial petitioner testified that the deposit of $ 4,500 to the Clayton Account on July 26, 1985, was made with his check for the same amount, a copy of which is in the record. Petitioner also testified that the source of the $ 4,500 represented by his check was a personal loan from Betty Sue Kelly in the amount of $ 5,000. In support of this testimony petitioner points to his check for the $ 4,500 made payable to Cupcake and a wire transfer of $ 5,000 from Ms. Kelly to him. Both his check and the wire transfer are dated July 29, 1985. His check cleared the bank on July 30, *160 1985. To explain the discrepancy in the dates shown for the deposit to the Clayton Account (July 26, 1985) and the dates of both his check and the wire transfer (July 29, 1985) petitioner testified that Clayton followed the practice of using as the date of a deposit the date he delivered his check to Clayton rather than the date on the check, even though postdated, or the date it cleared the bank. Even though petitioner did not produce at trial the testimony of Ms. Kelly or an official of Clayton to verify his view of this transaction, we are satisfied from the record as a whole and with the corroboration afforded by his check and the wire transfer of the same date that the source of this deposit was a personal loan from Ms. Kelly. Consequently, with this corroboration we find that the deposit does not represent taxable income to petitioner. In his testimony petitioner identified a cash loan from his mother, Martha E. Weatherford, as being the source of the deposit of $ 3,000 on October 11, 1985. Petitioner also testified that loans from his mother also accounted for the deposit of $ 19,875 on November 5, 1985, as well as $ 16,000 of the deposit of $ 18,750 on October 21, 1985. *161 In support of the $ 3,000 deposit on October 11, 1985, petitioner produced only his cancelled check for the $ 3,000. Consequently, as to the source of the funds represented by this check we have only petitioner's uncorroborated testimony, which as stated hereinbefore is not sufficient to carry his burden of proof. However, in support of his testimony that $ 16,000 of the $ 18,750 deposited on October 21, 1985, was a loan from his mother he produced not only his own cancelled check dated October 21, 1985, in the amount of $ 18,750 but also a cancelled check dated October 25, 1985, from his mother for $ 16,000 which is payable to him. Petitioner claims that this $ 16,000 plus the $ 1,814.39 received from his law firm in 1985 was the source of this deposit. Respondent concedes that the distribution from his law firm constituted part of the deposit. In support of his claim that the source of the deposit of $ 19,875 on November 5, 1985, was a loan from his mother, petitioner submitted his own check for that amount dated November 4, 1985, plus a check from his mother for $ 2,000 made payable to cash and a copy of a statement of account by his mother and his sister with First Tennessee *162 Bank indicating that a withdrawal in the amount of $ 18,000 was made from the account on November 8, 1985. The check made payable to cash is also dated November 8, 1985, and bears the endorsement "deposited to the account styled Heiskell Weatherford." In a conference call made prior to trial with the Court and respondent's counsel, and again at trial, petitioner asserted that his mother was not able to testify because she was 75 years old and in ill health. With this explanation for her absence and with the corroboration stemming from the cancelled checks described above and the bank statement reflecting the withdrawal from the account of $ 18,000, we are convinced that the source of the $ 16,000 deposited on October 21, 1985, and all of the deposit made on November 5, 1985, was loans from petitioner's mother and not taxable income to petitioner. In reaching this conclusion we have given due consideration to respondent's contention that petitioner's testimony with regard to the source of these two deposits is not worthy of belief because of the discrepancy between the dates on the checks and the dates of the deposits. In this connection respondent notes that the deposit of October *163 21, 1985, was made with petitioner's check for $ 18,750 on his checking account with First Tennessee Bank. The check was entered on Clayton's books on the same date, October 21, 1985. However, Mrs. Weatherford's check to petitioner was not dated until October 25, 1985. In explanation of the discrepancy petitioner testified that Clayton obviously entered the deposit on its books on the date, October 21, 1985, that he delivered his check but as noted on the check it was "Returned Not Paid, October 22, 1985" by the bank and was "Presented Twice" for payment. These notations on the check tend to corroborate petitioner's testimony that (1) he was having financial difficulties during this period and (2) that Clayton, being a brokerage firm and not a bank, entered the deposit when made and not when his check was finally "made good" in part by the $ 16,000 loan from his mother. For the same reasons we are unable to agree with respondent's similar argument with respect to the deposit made on November 5, 1985. Here petitioner's check for $ 19,875 on his checking account at First Tennessee Bank was dated November 4, 1985, and entered by Clayton on its books as of November 5, 1985. The *164 check, however, was "Returned Not Paid" by First Tennessee Bank on November 6, 1985, and was clearly "made good" at least in part by the $ 18,000 withdrawn by petitioner's mother from her account at the First Tennessee Bank on November 8, 1985. From all of the foregoing we are satisfied that the record before us contains sufficient corroboration to support a conclusion that $ 16,000 of the deposit made on October 21, 1985, and $ 18,000 of the deposit made on November 5, 1985, represented loans made to petitioner by his mother. Consequently, to this extent these deposits do not constitute taxable income to petitioner in 1985. (2) Deduction for Dues and Publications
On his return for 1984 petitioner claimed a deduction for business dues and publications in the amount of $ 1,368. At trial the parties stipulated that petitioner was entitled to a deduction for specific expenses in this category in the amount of $ 1,179.82. Petitioner, who has the burden of proof on this issue, offered no evidence in support of the other $ 188.18 and on brief presented no argument in favor of the balance of the deduction. We therefore conclude that he has abandoned his claim for the balance.
*165 (3) Self-Employment Tax
As indicated on his 1984 return petitioner was engaged in a business which he described as "Investments/Attorney." Section 1401 imposes a tax on self-employment income which is defined in section 1402(a) as "gross income derived by an individual from any trade or business carried on by such individual." From the record before us it is apparent that the additional gross income which we have found herein was derived from petitioner's practice of law and/or his investment business. Therefore, such additional income is subject to self-employment tax. In fact, petitioner does not argue to the contrary. Consequently, it is concluded that petitioner has also abandoned this issue. (4) Additions to Tax
If any part of an underpayment of income tax is due to negligence or the intentional disregard of rules and regulations, the underpayment is subject to a 5-percent addition to tax under section 6653(a)(1) as well as additional interest on the underpayment as provided in section 6653(a)(2). Petitioner has the burden of proof on this issue. Rule 142(a). As used in section 6653(a) negligence includes any failure to make a reasonable attempt to determine *166 and pay an income tax. Negligence also includes any careless, reckless, or intentional disregard of the law. Sec. 6653(a)(3). In this case we have found that petitioner, a well-educated and experienced lawyer, failed to report a substantial amount of business or professional income in each of the years 1984 and 1985 and failed to report interest income, a distribution from his law firm, and taxable income paid by the city of Memphis. Petitioner also admittedly claimed deductions for unsubstantiated expenses and dependency exemptions to which he was not entitled. Clearly such conduct by an attorney amounts to careless, reckless, or intentional disregard of applicable law, rules, and regulations. This is especially true where as here the taxpayer offers no proof with respect to many of such issues. See ; . We, therefore, sustain respondent's determination with respect to the additions to tax under section 6653(a)(1) and (2). Section 6661 imposes an addition to tax equal to 25 percent of any substantial understatement of income tax. Section 6661(a) defines *167 substantial understatement as being any understatement of income tax for a given year which exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return for such year. We are confidant that a computation under Rule 155 will reflect an understatement by petitioner in each of the years 1984 and 1985 which fall within the limits set forth by section 6661(a). [2] Consequently, we conclude that petitioner is liable for the addition to tax provided by section 6661 in each of such years. To reflect the foregoing as well as concessions made by the parties, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the deficiency.↩
2. However, in the event the computation under Rule 155 fails to place the understatement by petitioner in either year within the limits specified by section 6661(a), the addition to tax will not be due for such year.↩